[No. A050667. First Dist., Div. Two. May 28, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
BETZABE TORRES et al., Defendants and Appellants.

**COUNSEL**

Janice M. Lagerlof and Patricia L. Watkins, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald E. Niver and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

SMITH, J.—After their motion to suppress evidence and traverse a search warrant executed at their residence was denied, defendants and appellants Jose and Betzabe Torres withdrew their not guilty pleas to a host of criminal charges against them. Jose pleaded nolo contendere to manufacture of base cocaine (Health & Saf. Code, § 11379.6) and possession of a silencer (Pen. Code, § 12520), admitting certain enhancements. His wife, Betzabe, pleaded guilty to being an accessory to possession of cocaine (Pen. Code, § 32; Health & Saf. Code, § 11351). Jose was sentenced to an aggregate term of eight years in state prison. Betzabe received two years probation, including three hundred sixty days in the county jail. They appeal, availing themselves of the provisions of Penal Code section 1538.5, subdivision (m).[1]

The primary issue confronting us is whether the San Mateo Superior Court judge erred in failing to accord collateral estoppel effect to a suppression order issued by a Los Angeles Superior Court judge on different charges, which were ultimately dismissed. We will hold that the San Mateo court was not bound by the Los Angeles ruling, but will remand the case for further findings due to the trial court's application of an erroneous standard of review.

### BACKGROUND

The charges in this case stem from evidence seized pursuant to a search warrant at defendants' residence in Daly City, which was executed on September 3, 1989. The affidavit in support of the warrant incorporated a police report reciting that defendants had been arrested the night before by the California Highway Patrol (CHP) on Interstate highway 5 (I-5) north of Los Angeles with drugs in their possession. The Burbank police, who were surveilling defendants pursuant to a narcotics investigation, requested that the CHP stop defendants' vehicle in order to seek a consent search for narcotics. The truck was stopped for traveling at an excessive speed and, according to the police report, defendant Jose Torres (Jose) gave the officers permission to search the back of the truck. Forty kilograms of cocaine were recovered.

Using the information gained from the I-5 stop, police officers promptly obtained a search warrant for defendants' Daly City residence, where they recovered a large quantity of rock cocaine, $35,000 in cash, drug parapher-nalia and a silencer for a handgun.

---

[1]All further undesignated statutory references are to the Penal Code.

When Jose[2] was brought up on charges of possession and possession for sale of cocaine in Los Angeles County, he moved to suppress the evidence seized in the I-5 stop. The Los Angeles County Superior Court granted the motion, finding that the CHP had no probable cause to stop the vehicle because it was not traveling in excess of 55 miles per hour. On March 21, 1990, the People declared they were unable to proceed and the Los Angeles case was dismissed.

On May 7, 1990 the district attorney in San Mateo County filed an information charging both defendants with numerous drug-related offenses based on the evidence recovered in the Daly City search.[3]

Defendants brought a motion to "suppress evidence and to quash and traverse" the search warrant executed at their residence. Although the moving papers are not a model of clarity, the gist of defendants' arguments was that under the doctrine of collateral estoppel the San Mateo court was bound by the ruling of the Los Angeles court that the I-5 stop was illegal and that the affiant who prepared the affidavit in support of the search warrant was guilty of reckless or intentional misstatements of fact surrounding the stop (*Franks* v. *Delaware* (1978) 438 U.S. 154, 171-172 [57 L.Ed.2d 667, 681-683, 98 S.Ct. 2674]), requiring excision of these statements from the warrant. Defendants sought to quash the warrant and thereby suppress the fruits of the Daly City search.

At the outset of the hearing on the motion, the San Mateo Superior Court judge announced that she did not consider herself bound by the ruling of the Los Angeles Superior Court suppressing the cocaine recovered in the I-5 stop, and that the entire issue would be relitigated.

The court proceeded to hear the motion. It admitted into evidence the transcript of the Los Angeles suppression hearing and also heard live witnesses on both sides, including the CHP dispatcher, the officers who participated in the I-5 stop, and both defendants. At the conclusion of the hearing the court announced that defendants had not proved by a preponderance of evidence that there was perjury or reckless misstatements in the preparation of the affidavit and denied the motion to suppress. Following this ruling, defendants pleaded guilty and pursued this appeal.

---

[2]Betzabe was not charged in the Los Angeles case.

[3]Jose was charged with manufacture of cocaine in an amount exceeding one pound (Health & Saf. Code, §§ 11379.6, 11379.8), possession for sale of in excess of 57 pounds of cocaine base (Health & Saf. Code, § 11351.5; § 1203.073, subd. (b)(5)), possession of more than 57 grams of cocaine (Health & Saf. Code, § 11351; § 1203.073, subd. (b)(5)), and possession of a silencer for firearms (§ 12520). It was also alleged that Jose had suffered two prior convictions within the meaning of Health and Safety Code section 11370, subdivision (a). Betzabe was charged with the same substantive counts, minus the prior felony allegations.

APPEAL

I

*Collateral Estoppel*

Defendants contend that under the doctrine of collateral estoppel the San Mateo County Superior Court was bound to honor the ruling of the Los Angeles County Superior Court that the cocaine recovered from defendants' truck when it was stopped by the CHP on I-5 was obtained in violation of their Fourth Amendment rights. Citing the San Mateo County prosecutor's concession that the search warrant affidavit could not stand if the information concerning the fruits of the I-5 search were to be excised, defendants argue that the court erred in refusing to suppress the evidence found at their residence as obtained pursuant to a defective warrant.

Section 1538.5, subdivision (d) (hereafter subdivision (d)) provides that, unless the People avail themselves of their appellate remedies, evidence suppressed pursuant to a section 1538.5 motion shall not be admissible against the moving party "at any trial or other hearing."[4] Defendants claim that this section, coupled with the policy in favor of according finality to judgments and preventing vexatious litigation by prosecutors, requires that suppression rulings rendered in one county be given binding effect in other counties as well.

Collateral estoppel generally precludes relitigation of matters argued and determined in prior proceedings. The traditional prerequisites for application of the doctrine are that " '(1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].' " (*People* v. *Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321], fn. omitted, quoting *People* v. *Taylor* (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622].)

These requirements are fulfilled in this case. The legality of the I-5 stop is the identical issue sought to be relitigated in San Mateo County; the Los Angeles proceeding resulted in a dismissal of the charges there and the

---

[4]The full text of subdivision (d) reads: "If a search or seizure motion is granted pursuant to the proceedings authorized by this section, the property or evidence shall not be admissible against the movant at any trial or other hearing unless further proceedings authorized by this section, Section 871.5, Section 1238, or Section 1466 are utilized by the People."

People did not appeal from that dismissal; the privity requirement was met since the party sought to be estopped in both instances is the People of the State of California.

 However, the inquiry does not end here. In deciding whether to apply collateral estoppel in a criminal proceeding the court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case. (*People* v. *Gephart* (1979) 93 Cal.App.3d 989, 997 [156 Cal.Rptr. 489]; *People* v. *Taylor, supra*, 12 Cal.3d 686, 695.) The California Supreme Court recently commented that collateral estoppel may be applied to preclude criminal trials "only when compelling public policy considerations outweigh[] the need for determinations of guilt and innocence to be made in the usual criminal setting." (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 349 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].)

The issue before us is not entirely unprecedented. In *People* v. *Gephart, supra*, 93 Cal.App.3d 989 (*Gephart*), defendants, who were charged[5] in Stanislaus County, successfully brought a section 1538.5 motion to suppress certain items of evidence, one of which was a pistol. The Stanislaus County charges were dismissed, and the People took no appeal from that ruling. Subsequently, defendants were charged with robbery in Siskiyou County and the prosecution there sought to introduce the pistol. The Siskiyou County judge refused to give binding effect to the suppression ruling in Stanislaus County, the gun was admitted into evidence, and defendants were convicted.

On appeal from the judgment, Justice Reynoso, writing for the court, held that an order suppressing evidence in one county will not preclude relitigation of the same suppression issue when the defendant is faced with unrelated charges in a different county. Noting that the determination of a section 1538.5 motion is a preliminary question independent of the accused's guilt and that prosecutorial discretion in deciding whether to prosecute or dismiss is wide and may vary from county to county according to a number of considerations, the *Gephart* court concluded, "We do not believe that the Legislature intended to give the [section 1538.5] determination conclusive effect beyond the proceedings in which the defendant is involved at the time of the determination. The purposes of Penal Code section 1538.5 would be fully served without such effect in subsequent prosecutions on different charges." (93 Cal.App.3d at p. 999.)

Defendants maintain that *Gephart* is distinguishable because the charges there were *unrelated*, whereas both sets of charges here arose from a single

---

[5]The record in *Gephart, supra*, did not disclose the nature of these charges. (93 Cal.App.3d at p. 992, fn. 2.)

narcotics operation targeted at them and conducted jointly by northern and southern California law enforcement authorities. Defendants also criticize the "sweeping language" of *Gephart* to the effect that section 1538.5 rulings can never have collateral estoppel effect beyond the proceeding in which they are made; they claim such language is inconsistent with subdivision (d) and subsequent cases, some of which are from the same district.

A fair reading of *Gephart*, however, shows that the court did not premise its holding on the relatedness or unrelatedness of the charges. Rather, the paramount concern was the unfairness to the prosecutor in County A of preventing him from litigating a suppression issue simply because of a prior discretionary decision by the prosecutor in County B not to challenge an adverse ruling pertaining to a different charge, especially when the decision in County B may have had little or nothing to do with the merits of the ruling.

Later cases have confirmed an interpretation of *Gephart* consistent with this view. "[*Gephart* held] that a section 1538.5 suppression order is not binding on the prosecutor of a *different* county on *different* charges . . . ." (*People* v. *Workman* (1989) 209 Cal.App.3d 687, 700-701 [257 Cal.Rptr. 753], italics added.) "Findings made on a . . . section 1538.5 motion to dismiss are not binding on a court considering dismissal of *different charges* based on *different crimes*." (*People* v. *Huston* (1989) 210 Cal.App.3d 192, 225 [258 Cal.Rptr. 393], italics added.) "[W]here the subsequent filing or case is in a different county and/or the charges are not identical, a previously suppressed item of evidence may be introduced albeit it may be the same evidence resulting from the same search or seizure." (*People* v. *Methey* (1991) 227 Cal.App.3d 349, 356 [277 Cal.Rptr. 777].)

Defendants claim *People* v. *Zimmerman* (1979) 100 Cal.App.3d 673 [161 Cal.Rptr. 188] (*Zimmerman*), should control this case. In *Zimmerman*, defendant was arrested and charged in Santa Clara County with possession of LSD and possession of a firearm. At the preliminary hearing, the fruits of a search of the defendant were suppressed and the charges dismissed. Subsequently, the Contra Costa Superior Court modified the defendant's probation based on the same LSD and firearm possession charges brought in Santa Clara County. In a brief opinion, Division Three of this court reversed, holding that subdivision (d) precluded use of the evidence which had been suppressed in the prior criminal proceeding. (100 Cal.App.3d at p. 676.)

The key distinction is that in *Zimmerman* the offenses which the defendant faced in the Contra Costa County revocation proceeding were the precise charges which were dismissed in the prior criminal action. Here the prosecutions involved different offenses committed in different jurisdictions and based on different evidence.

For these reasons, *Dyson v. State Personnel Bd.* (1989) 213 Cal.App.3d 711 [262 Cal.Rptr. 112] (State Personnel Board collaterally estopped from bringing disciplinary action based on evidence suppressed in prior criminal action) and *Buttimer v. Alexis* (1983) 146 Cal.App.3d 754 [194 Cal.Rptr. 603] (Dept. of Motor Vehicles may not revoke license based on arrest ruled illegal in prior criminal proceeding), both of which are cited by defendants, are not persuasive. In those cases an administrative agency was not permitted to relitigate the *same charges* which had been quashed as a result of a successful section 1538.5 motion in a court of law. ▮ Furthermore, while there are strong policy reasons in favor of precluding administrative tribunals from readjudicating issues that have already been decided in prior judicial proceedings, no equally compelling policy reasons demand that one superior court, considering new charges in its own jurisdiction, be constrained to follow another superior court's preliminary evidentiary ruling which does not directly bear on an accused's guilt or innocence.

Recent case law supports our determination that collateral estoppel should not apply here. In *People v. Workman, supra,* 209 Cal.App.3d 687 (*Workman*), a magistrate granted a suppression motion at the preliminary hearing and the charges were dismissed. The prosecutor did not appeal from the ruling, but merely filed a new complaint with additional charges based on the same transactions as the original complaint. The second magistrate refused to give collateral estoppel effect to the first suppression ruling and defendants eventually pleaded guilty to some of the charges. In upholding the convictions, the *Workman* court held that subdivision (d) did not compel the second court to give collateral estoppel to effect the first magistrate's ruling. The court not only relied on section 1538.5, subdivision (j)[6] but adopted *Gephart*'s conclusion that the Legislature did not intend to give a suppression ruling conclusive effect " '*beyond the proceedings in which the defendant is involved at the time of the determination.*' " (209 Cal.App.3d at p. 701, italics added, quoting *Gephart, supra,* 93 Cal.App.3d at p. 999.)

In *People v. Methey, supra,* 227 Cal.App.3d 349, the court narrowed the application of subdivision (d) even further. Methamphetamine was found during a pat-search of the defendant. On a prosecution for possession, the superior court granted a motion to suppress the evidence and the charges were dismissed. Pursuant to its authority under section 1387, the prosecution reinstated the complaint and filed a new information in superior court. This

---

[6]Subdivision (j) provides in part that: "If the property or evidence relates to a felony offense initiated by complaint and the defendant's motion for . . . suppression of the evidence at the preliminary hearing is granted, and if the defendant is not held to answer . . . the people may file a new complaint . . . and the ruling at the prior hearing shall not be binding in any subsequent proceeding. . . ."

time the defendant's motion to suppress was denied. The Court of Appeal affirmed the judgment. Noting that under *Workman* the People may dismiss at the preliminary hearing and then refile without being bound by a prior suppression ruling, *Methey* concluded that there is no logical reason why the prosecution should be unable to relitigate a suppression ruling simply because the first charge was dismissed at the superior court level. The court held that subdivision (d)'s prohibition on the use of suppressed evidence " 'at any trial or hearing' " referred only "to any trial or hearing resulting from the charging documents then before the court." (227 Cal.App.3d at p. 354.) In reaching this conclusion the court also took cognizance of the line of cases beginning with *Gephart* "holding that *where the subsequent filing or case is in a different county and/or the charges are not identical,* a previously suppressed item of evidence may be introduced albeit it may be the same evidence resulting from the same search or seizure." (*Id.,* at p. 356, italics added.) The California Supreme Court denied a petition for review in *Methey.*

*Gephart's* interpretation of subdivision (d), first articulated in 1979, has thus been recently reaffirmed in both *Workman* and *Methey.* We conclude that a suppression ruling resulting in a dismissal of charges at a preliminary stage in one county should not preclude litigation of the validity of a search or seizure where the defendant faces new and separate criminal charges in a different jurisdiction.

We do not share defendants' concern that this conclusion sanctions harassment of defendants or "forum shopping" by prosecutors. This is not a situation where the prosecutor dismisses the case in one county and brings it to another in the hope of receiving more favorable treatment. Nor is there any suggestion that the San Mateo district attorney had any control or knowledge of the proceedings in Los Angeles County which led to the dismissal of the cocaine charges there. Fundamental fairness and the public policy in favor of litigating questions of guilt or innocence on their merits outweigh the need for consistency in a situation where the defendants face new and separate charges in another county.

The trial court committed no error in refusing to abide by the suppression ruling in Los Angeles County.

II

*Procedural Error*

Defendants next argue that even if the court was not bound to honor the suppression ruling of the Los Angeles court, it erred by directly adjudicating the *Franks* issue of whether or not there were reckless or false

misstatements in the search warrant affidavit instead of first determining the legality of the I-5 stop and search. We agree.

Defendants correctly point out that if the I-5 search was illegal the observations gained therefrom must be stricken and the affidavit retested for probable cause. (*People v. Koch* (1989) 209 Cal.App.3d 770, 774 [257 Cal.Rptr. 483].) Since the prosecutor below conceded that the search warrant would not provide probable cause to search if the fruits of the I-5 search were suppressed, one might expect defendants' trial counsel to have advanced a fruit-of-the-poisonous-tree argument to invalidate the warrant, rather than subjecting defendants to the much more stringent *Franks* test of whether the affidavit contained intentionally false or deceptive facts.

Nevertheless, the main premise of the suppression motion was that the warrant was defective because the affiant officer filled it with intentional or recklessly false statements *regarding the existence of probable cause to stop and defendants' asserted consent to the I-5 search.* Defendants only indirectly attacked the warrant as the product of illegally obtained evidence.

Responding to the focus of defendants' arguments, the judge repeatedly made comments to the effect that she was resolving the matter strictly as a *Franks* motion. Indeed, at the conclusion of the hearing Judge Kosloski stated, "The court rules that the *defendant has not proved the allegations that there was perjury or reckless disregard for the truth . . . .*" (Italics added.)

While the court's actions were understandable in light of defendants' emphasis on the *Franks* issue, there was no justification for its failure to address the threshold question of whether the I-5 stop and search were reasonable in the first instance.[7]

■ The error was prejudicial because the allocation of the burden of proof with respect to the two issues is not only different but diametrically opposite. In a motion to suppress the fruits of a warrantless search, the burden is on the prosecution to prove by a preponderance of the evidence that the detention and search were justified. (*People v. Huntsman* (1984) 152 Cal.App.3d 1073, 1086 [200 Cal.Rptr. 89]; see *People v. Boragno* (1991) 232 Cal.App.3d 378, 386 [283 Cal.Rptr. 452].) In a *Franks* motion, the search warrant is presumptively valid and the burden falls on the defendant to show that it contained deliberately or recklessly false statements. (*People v. Costello* (1988) 204 Cal.App.3d 431, 440-441 [251 Cal.Rptr. 325], quoting

---

[7]Defendants sought to bring the issue of the validity of the truck search to the court's attention the day before the hearing by filing a supplemental memorandum of points and authorities; the court, however, refused to consider the memo on grounds of untimeliness and its purported failure to "raise any new issues."

*Franks* v. *Delaware, supra,* 438 U.S. 154, 171-172 [57 L.Ed.2d 667, 681-683].) Since the court only adjudicated the motion under the more stringent *Franks* standard, the error cannot be deemed harmless.

Defendants were entitled to a judicial determination of whether the People sustained their burden of proving the reasonableness of the I-5 search independent of any consideration of the *Franks* issue. We disagree however with their suggestion that a new evidentiary hearing be held. The court has already conducted a full hearing in which it heard evidence and argument by both sides on the validity of the detention and search. All it need do at this point is to employ a two-step rather than a one-step process in ruling on the motion: (1) determine whether the I-5 stop and warrantless search were valid, and (2) decide whether, under *Franks*, the affidavit for the San Mateo County search warrant contained false or reckless misstatements. If so, the court should strike them and retest the affidavit for probable cause.

DISPOSITION

The judgments are reversed. The cause is remanded to the superior court with directions to make appropriate findings on defendants' suppression motion in accordance with the views expressed herein.

If the court grants the motion to suppress in all or in part it shall vacate the judgments and give the defendants the opportunity to withdraw their guilty pleas. If the court denies the motion, it shall reinstate the judgments. (See *People* v. *Miller* (1983) 33 Cal.3d 545, 553-556 [189 Cal.Rptr. 519, 658 P.2d 1320].)

Peterson, J., concurred.

**KLINE, P. J.,** Concurring and Dissenting.—I dissent only from part I of the majority opinion, which concludes that the doctrine of collateral estoppel does not require the San Mateo Superior Court to honor the suppression ruling in Los Angeles even though the traditional prerequisites for the application of the doctrine have all been met.

The facts of the instant case are, in my view, easily distinguishable from those of *People* v. *Gephart* (1979) 93 Cal.App.3d 989 [156 Cal.Rptr. 489] and other cases the majority opinion relies upon. In my view, the majority has unjustifiably expanded the holding in *Gephart*. This not only conflicts with the observation of another division of this court that *Gephart* "is patently limited by its highly unusual facts" (*Derrick J.* v. *Superior Court* (1983) 146 Cal.App.3d 748, 753 [194 Cal.Rptr. 348]), but significantly

undermines the statutory bar on the use of suppressed evidence. (Pen. Code, § 1538.5, subd. (d).)[1]

The *Gephart* court refused to give binding effect in Siskiyou County to the earlier suppression ruling in Stanislaus County because to do so "could prevent prosecution in a different county on *unrelated* charges where *entirely different policy reasons* may exist for pursuing prosecution." (93 Cal.App.3d at p. 1000, italics added.) The court made it clear that the earlier charges in *Gephart* were "distinct from the charges against the defendants in Stanislaus County." (*Ibid.*)

The charges in Los Angeles and San Mateo Counties with which we are here concerned are *not* "unrelated" or "distinct," within the meaning of *Gephart*, and the policy reasons for pursuing the subsequent charges are no different from those pertaining to the earlier charges.

First, we do not in this case have two independent criminal investigations leading to the same evidence. A single criminal investigation led to the various offenses charged in both counties, and the investigation was headed by Detective Jose Duran of the Burbank Police Department, who was "involved in multi-jurisdictional narcotics investigations." At all material times Detective Duran was "participating in an investigation involving individuals whom [he] . . . believe[d] obtained cocaine in multi-kilogram quantities in the Los Angeles area for purposes of transporting it to the northern California area."

The search warrant authorizing the search of the premises in San Mateo County was issued by a Los Angeles County magistrate. The magistrate could not have issued the warrant for an out-of-county search unless he believed it will pertain to a present or future prosecution in the County of Los Angeles. Detective Duran's affidavit asserted that the evidence he desired to seize in San Mateo County "[w]ill tend to prove that the suspects in custody [i.e., appellants] were aware of the items in the vehicle they were driving [in Los Angeles]. Said evidence would therefore be useful in prosecution in Los Angeles County of the suspects."

The San Mateo County prosecution was the direct consequence of the failed proceeding in Los Angeles County. Burbank law enforcement authorities returned the evidence to San Mateo and caused a prosecution to be initiated in that county only after the District Attorney of Los Angeles County apparently concluded it would be futile to appeal the adverse suppression ruling or refile the charges in the same trial court that had suppressed the evidence.

---

[1] All further statutory references are to the Penal Code.

It would not be unfair to the San Mateo County District Attorney to prevent him from prosecuting an offense that did not result from a San Mateo criminal investigation. The record is bereft of any suggestion that the San Mateo authorities were independently aware of appellants' criminal activities or that they independently initiated the San Mateo prosecution. So far as the record shows neither Daly City police nor any other law enforcement officials in San Mateo County ever conducted a criminal investigation implicating appellants. The San Mateo prosecution derived *entirely* from the investigation of the Burbank police officers, who not only obtained the Los Angeles warrant for the San Mateo search, but came to Northern California to lead the search.

The evidence seized in the search, which was immediately taken to Los Angeles County, was returned to San Mateo County only after dismissal of charges by the Los Angeles Superior Court and the decision of the Los Angeles County District Attorney not to appeal suppression of the evidence seized in Daly City.

Possession of cocaine for sale was charged both in Los Angeles and San Mateo Counties, although additional charges not previously made were also alleged in San Mateo. This is very different from *Gephart,* in which armed robbery had been charged in the first county and receiving stolen property in the second. Unlike *Gephart,* it certainly cannot in this case be said that "entirely different policy reasons may exist for pursuing prosecution" in the subsequent case. (93 Cal.App.3d at p. 1000.)

The majority distinguishes *People* v. *Zimmerman* (1979) 100 Cal.App.3d 673 [161 Cal.Rptr. 188], *Dyson* v. *State Personnel Bd.* (1989) 213 Cal.App.3d 711 [262 Cal.Rptr. 112], and *Buttimer* v. *Alexis* (1983) 146 Cal.App.3d 754 [194 Cal.Rptr. 603], because in those cases the subsequent proceeding involved the "precise charges" (maj. opn., *ante,* p. 1331) or the "same charges" (maj. opn., *ante,* p. 1332, italics omitted) that had earlier been dismissed or quashed. This constrictive redefinition of the concept of "related charges" virtually emasculates subdivision (d) of section 1538.5. If, as will usually be true, the charges can be slightly modified, the People can relitigate a suppression motion without the bother of appealing an adverse ruling. Thus, in what may well become a significant number of cases, the repetitive litigation that subdivision (d) of section 1538.5 was designed to prevent may become commonplace.

*People* v. *Workman* (1989) 209 Cal.App.3d 687 [257 Cal.Rptr. 753] and *People* v. *Methey* (1991) 227 Cal.App.3d 349 [277 Cal.Rptr. 777] do not, as the majority claims, support a strict interpretation of *Gephart.* (Maj. opn., *ante,* pp. 1332-1333.)

*Workman*, which involved a voluntary dismissal and refiling of felony charges by the same prosecutor in the same county, required the court to reconcile the seeming conflict between subdivisions (d) and (j) of section 1538.5. Subdivision (j) provides that "If . . . the defendant's motion for . . . suppression of the evidence at the preliminary hearing is granted, and if the defendant is not held to answer at the preliminary hearing, the people may file a new complaint . . . and the ruling at the prior hearing shall not be binding in any subsequent proceeding. . . ." *Workman* simply stands for the unremarkable proposition that the specific statutory authorization for the refiling of charges is not vitiated by the doctrine of collateral estoppel.

Like *Workman*, *People* v. *Methey*, *supra*, also involved the refiling of felony charges by the same prosecutor in the same county. In *Methey* the court granted the defendant's motion to suppress and thereafter dismissed the charge under section 1385. The prosecutor then refiled on the authority of section 1387, which gives the People one additional opportunity to refile charges previously dismissed. The Court of Appeal simply held that neither res judicata nor collateral estoppel interferes with the ability of the prosecution to attempt to rely on evidence previously suppressed when charges are refiled under section 1387.

Unlike the present case, application of the doctrine of collateral estoppel in *Workman* and *Methey* would have interfered with a right explicitly conferred by the Legislature upon the prosecution. Those cases would be germane if the District Attorney of Los Angeles County had refiled the charges dismissed and appellant's objected to the proposed use of evidence earlier suppressed, as specifically authorized by subdivision (j) of section 1538.5.[2]

Application of the doctrine of collateral estoppel in our case would not infringe any power to refile charges conferred by statute upon the District Attorney of San Mateo County. Apart from the relatedness of the charges filed in Los Angeles and San Mateo Counties, which distinguishes this case from *Gephart*, all the technical prerequisites for collateral estoppel are present in our case, as the majority acknowledges. The public policies involved also favor application of the doctrine; namely, "minimizing repetitive litigation" (*People* v. *Sims* (1982) 32 Cal.3d 468, 488 [186 Cal.Rptr. 77, 651 P.2d 321]); promoting the sensible use of judicial resources, which "is even more important in criminal than in civil trials" (*People* v. *Taylor* (1974)

---

[2]It also bears mentioning that the Fifth District in *Workman* and the Fourth District in *Methey* both recognized that the results they reached conflict with the opinion of our district (Div. One) in *People* v. *Superior Court* (*Brotherton*) (1983) 147 Cal.App.3d 281 [195 Cal.Rptr. 96], which holds that subdivision (d) of section 1538.5 precludes relitigation of suppression issues upon a subsequent filing of identical charges in the same county. (See *Workman*, *supra*, 209 Cal.App.3d at pp. 699-700 and *Methey*, *supra*, 227 Cal.App.3d at p. 356.)

12 Cal.3d 686, 695 [117 Cal.Rptr.70, 527 P.2d 622]), and preserving the integrity of the criminal justice system. (*People* v. *Sims, supra,* at p. 488.) There is no reason law enforcement authorities in southern California ought to be able to compel different superior courts to preside over two separate evidentiary presentations where the same parties try to prove and disprove the identical issue.

Finally, though it is not central to my position, I do not think we need blind ourselves to the dubious nature of the findings made by the San Mateo Superior Court. The presence at the "traffic stop" of four California Highway Patrol (CHP) officers and two Burbank detectives, together with the CHP tape indicating that the arresting officers were travelling at only 55 m.p.h. at the time of the stop, strongly suggests the traffic violation was pretextual and there was no probable cause to stop the vehicle in the first place. Furthermore, on the question of the reasonableness of the search, it is hard to see the necessity for searching a locked receptacle in the back of a truck in connection with a "traffic stop" which itself provided no evidence of contraband or danger to the arresting officers. The arresting officer's claim that there was consent to the search of a locked receptacle appellants knew contained a large quantity of contraband requires the willing suspension of disbelief, as the Los Angeles judge observed.

The inconsistency between the findings of the San Mateo Superior Court and those of the Los Angeles Superior Court, which the People were unwilling to appeal, undermines the integrity of our judicial system, which subdivision (d) of section 1538.5 was intended to prevent. (*People* v. *Sims, supra,* 32 Cal.3d at p. 488.)

For the foregoing reasons, I would reverse the judgment.

Appellants' petition for review by the Supreme Court was denied August 13, 1992. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.