[Civ. No. 22587. Third Dist., Aug. 30, 1983.]

JAMES ROYAL BUTTIMER, Plaintiff and Respondent, v.
DORIS V. ALEXIS, as Director, etc., Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Paul H. Dobson, Deputy Attorney General, for Defendant and Appellant.

Feldman, Shaw & DeVore and David L. DeVore, for Plaintiff and Respondent.

OPINION

CARR, J.—The Department of Motor Vehicles (DMV) appeals from a judgment commanding DMV to set aside an order of suspension of plaintiff

Buttimer's (hereinafter referred to as petitioner) driver's license. ■ At issue is the right of DMV in hearings pursuant to Vehicle Code section 13353 to relitigate the lawfulness of an arrest after a criminal court, in connection with a motion to suppress (Pen. Code, § 1538.5), has ruled the arrest unlawful. The trial court ruled DMV was collaterally estopped from relitigating the issue. We affirm.

On December 18, 1981, petitioner was arrested in South Lake Tahoe for driving under the influence of an intoxicating liquor in violation of Vehicle Code section 23102, subdivision (a) (hereafter all statutory references are to this code unless otherwise indicated). Apparently, at the time of his arrest, petitioner refused to submit to a chemical test of his blood, breath or urine as required by section 13353.

Thereafter, criminal proceedings were initiated charging petitioner with a violation of section 23102, subdivision (a). During the course of the criminal proceedings, petitioner, urging there was no probable cause for his arrest, moved pursuant to Penal Code section 1538.5 to suppress evidence of his refusal to submit to a chemical examination. Following the conclusion of suppression proceedings, the trial court ruled: "The arrest of the defendant . . . for the offense of violation of Vehicle Code Section 23102(a) by officers of the South Lake Tahoe Police Department, occurred in the absence of probable cause . . . . [¶] The Court further finds that evidence of . . . defendant's alleged refusal to submit to chemical tests pursuant to Vehicle Code Section 13353 et seq., is suppressed as a fruit of said defendant's unlawful arrest." It appears the El Dorado District Attorney did not seek a redetermination regarding the lawfulness of the arrest but dismissed the criminal proceedings.

In February 1982, petitioner received notice that DMV proposed to suspend his driver's license for a period of six months, based on his refusal to submit to a chemical test following his December 1981 arrest for violation of section 23102, subdivision (a). Petitioner requested a formal hearing which was held on April 16, 1982. At the hearing, petitioner attempted to offer evidence that the issue of the lawfulness of his arrest had been fully and finally determined by the El Dorado Justice Court. The hearing officer ruled the evidence inadmissible and refused to consider the same. The hearing then continued with the testimony of the arresting officer that petitioner refused to submit to a chemical test following his arrest. The hearing officer concluded petitioner was lawfully arrested and ordered suspension of his driving license for a six-month period beginning June 22, 1982.

Petitioner filed a petition for writ of mandate, seeking to have the order of suspension set aside and his driver's license reinstated. Petitioner asserted

the justice court's ruling that his arrest was unlawful was binding on DMV. Following hearing and argument, the trial court concluded that under the authority of *Shackelton v. Department of Motor Vehicles* (1975) 46 Cal.App.3d 327 [119 Cal.Rptr. 921], the ruling of the justice court that petitioner's arrest was unlawful is a conclusive determination binding upon DMV and estopping DMV from making a finding to the contrary. The trial court entered a judgment ordering a peremptory writ of mandate issue commanding DMV to set aside its order of suspension and to reinstate petitioner's driver's license as it existed before the suspension.

I

Section 13353, California's "implied consent law," "obligates any driver to submit to one of three chemical tests to establish the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while driving a motor vehicle under the influence of intoxicating liquor. Where the driver [either refuses to take or] fails to complete a test, the DMV is required to suspend his driver's license for a period of six months. (Veh. Code, § 13353, subds. (b) and (c).) ▇▇ Where, however, the arrest is unlawful, the driver's license may not be suspended. (*Shackelton v. Department of Motor Vehicles* (1975) 46 Cal.App.3d 327, 330-331 . . . .)" (*Behan v. Alexis* (1981) 116 Cal.App.3d 403, 405 [172 Cal.Rptr. 132].)

In *Shackelton v. Department of Motor Vehicles, supra,* the court was faced with an issue identical to that presented in the instant case. The *Shackelton* court held that DMV, in proceedings pursuant to section 13353, was bound by a prior finding of a municipal court in connection with a motion to suppress evidence that the driver's arrest was unlawful. ▇▇ ▇▇▇ Citing the three requirements of collateral estoppel,[1] the court concluded all three requirements were met and that DMV was estopped to make a contrary finding on the issue of the lawfulness of the arrest. (46 Cal.App.3d at pp. 330-331.)

DMV urges this court to reject *Shackelton*, particularly in light of the criticism of *Shackelton* contained in *Lofthouse v. Department of Motor Vehicles* (1981) 124 Cal.App.3d 730 [177 Cal.Rptr. 601]. *Lofthouse* is not on point. The trial court in the criminal proceedings dismissed the complaint pursuant to Penal Code section 1385. ▇▇ ▇▇▇ At a subsequent DMV hearing, the motorist (respondent) argued the arrest was unlawful and that

---

[1]These elements are: (1) an issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with the party at a prior proceeding. (*Shackelton v. Department of Motor Vehicles, supra,* 46 Cal.App.3d at p. 331.)

the dismissal order was res judicata[2] on that issue. The *Lofthouse* court declined to apply the doctrine of collateral estoppel for lack of the element of identity of issue decided in a prior proceeding. (*Id.*, at pp. 735-738.) The *Lofthouse* court discussed *Shackelton,* stating: "While we do not believe that the holding in that case correctly states the law, the fact remains that in the instant case *the issue of the legality of the respondent's arrest was irrelevant to and was never in fact determined in the criminal proceedings.*" (Italics added; *id.*, at p. 738.) ■ To the extent the issue of the lawfulness of the arrest was not litigated in the criminal proceedings, *Lofthouse* correctly states the law that DMV is not barred at the suspension hearing from litigating the issue.

In *Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591 [130 Cal.Rptr. 91], the court held an allegedly erroneously submitted notification to DMV of the respondent's submission to a chemical test did not divest DMV of jurisdiction to suspend respondent's driver's license. The court found no basis for application of the doctrine of collateral estoppel in the fact that the municipal court in previous criminal proceedings had approved a stipulation between the district attorney and defense counsel to the effect that respondent had complied with the implied consent law. The court determined the stipulation was *unnecessary* to the judgment entered in the trial court and thus there was no collateral estoppel. (*Id.*, at pp. 596-597.) In dicta, the *Skinner* court noted that "[t]he fact that DMV decides to hold a hearing would not mean DMV could make a finding contrary to law. It would be bound by any pertinent legal ruling theretofore properly made by a court such as the fact that there was an illegal arrest (*Shackelton* v. *Department of Motor Vehicles* . . . or that certain prior convictions were constitutionally defective. [Citation.]" (*Id.*, at p. 596, fn. 3.)

II

■ DMV does not deny the issue of the lawfulness of petitioner's arrest was necessarily litigated in the El Dorado Justice Court and that such proceeding became final when the criminal charges were dismissed. DMV asserts, however, there is no privity between the El Dorado County District Attorney and DMV, and that application of the doctrine of collateral estoppel is unjustified. We disagree.

We note, first, a similar argument was raised and rejected in *Mitchell* v. *Orr* (1969) 268 Cal.App.2d 813 [74 Cal.Rptr. 407], wherein it was held DMV may not relitigate the issue of the validity of a prior conviction once

---

[2]Collateral estoppel is a "secondary aspect" of the doctrine of res judicata. (*People* v. *Sims* (1982) 32 Cal.3d 468, 477, fn. 6 [186 Cal.Rptr. 77, 651 P.2d 321].)

that issue has been determined in a previous criminal proceeding. (*Id.*, at pp. 814-817.)

The issue was also determined in *People* v. *Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321]. In *Sims,* a welfare recipient who had been exonerated of fraud charges in an administrative hearing conducted by the Department of Social Services was subsequently prosecuted in a criminal proceeding for the same alleged misconduct. The *Sims* Court held the doctrine of collateral estoppel barred the People from relitigating the criminal proceeding issues that were resolved in the administrative hearing. (*Id.*, at pp. 489-490.)

It was argued in *Sims* that the County Department of Social Services was not in privity with the district attorney, and thus collateral estoppel could not properly be invoked. The court disagreed: " 'Privity is essentially a shorthand statement that collateral estoppel is to be applied in a given case; there is no universally applicable definition of privity.' [Citation.] The concept refers 'to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel.' [Citations.] [¶] Here, the District Attorney's office, which represents the party to be estopped, and the County, the unsuccessful party in the prior litigation, are 'sufficiently close' to warrant applying collateral estoppel. Both entities are county agencies that represented the interests of the State of California at the respective proceedings. The District Attorney's office represents the State of California in the name of the 'People' at criminal prosecutions. (See Pen. Code, § 684.) At fair hearings, the county welfare department acts as the 'agent' of the state. '[T]he courts have held that the agents of the same government are in privity with each other, since they represent not their own rights but the right of the government. . . .' [Citations.]" (32 Cal.3d at pp. 486-487; fn. omitted.)

We see no reason for finding the El Dorado District Attorney and DMV are not in privity. DMV may have no control over the actions of the District Attorney, however, the district attorney represents the State of California in criminal matters, and DMV represents the interests of the State of California in its hearings. We conclude the State of California is the real party in interest in both proceedings and the requirement of privity as an element of collateral estoppel is satisfied.

III

*People* v. *Sims* discusses the policy considerations which mandate the application of collateral estoppel to bar the People from relitigating issues

previously resolved in the administrative hearing. These include minimizing repetitive litigation, precluding the possibility of inconsistent judgments, and protection from harassment by repeated litigation. (32 Cal.3d at p. 468-469.)[3] These policy considerations apply equally in the present case. More important, the *Sims* Court was concerned about protecting the integrity of both the judicial system and the fair hearing process: "[I]f the criminal prosecution is allowed to proceed and ultimately results in the respondent's conviction, not only the integrity of the judicial system, but also the integrity of the fair hearing process will be called into question. [¶] The fair hearing is the sole method the Legislature provides for a welfare recipient to challenge the validity of a County determination that benefits have been fraudulently obtained. If in a subsequent criminal prosecution a DSS decision exonerating the recipient of fraud can be disregarded, the value of the fair hearing determination is substantially diminished." (32 Cal.3d at p. 488.)

The integrity of a prior judicial determination must be accorded at least the same significance as a prior administrative determination.

## IV

DMV relies on *People* v. *Gephart* (1979) 93 Cal.App.3d 989 [156 Cal.Rptr. 489], and *People* v. *Williams* (1979) 89 Cal.App.3d 1026 [152 Cal.Rptr. 892], for the rule that determination of issues pursuant to Penal Code section 1538.5 has no application to subsequent civil or administrative proceedings. Both cases are distinguishable. In *Gephart,* defendants were arrested in Stanislaus County on charges of, inter alia, receiving stolen property. Defendants' motion to suppress pursuant to Penal Code section 1538.5 was granted as to all of the evidence seized and the action was dismissed. (93 Cal.App.3d at pp. 992-993.) Thereafter, defendants were accused of a robbery committed in Siskiyou County. The Siskiyou County robbery was separate and distinct from the charges which had been dis-

---

[3] "[E]stopping the District Attorney from prosecuting respondent for welfare fraud would further the traditional public policies underlying application of the doctrine. Giving conclusive effect to the DSS [Department of Social Services] decision exonerating respondent of welfare fraud would promote judicial economy by minimizing repetitive litigation.

"In addition, the possibility of inconsistent judgments which may undermine the integrity of the judicial system would be prevented by applying collateral estoppel to the fair hearing decision. . . .

"Finally, precluding the district attorney from relitigating the issue of respondent's welfare fraud would protect respondent from being harassed by repeated litigation. The County had an adequate opportunity at the fair hearing to prove that respondent had fraudulently obtained welfare benefits. However, respondent successfully demonstrated her innocence. To subject her to a second proceeding in which she must defend herself against the very same charges of misconduct would be manifestly unfair." (*People* v. *Sims, supra,* 32 Cal.3d at pp. 488-489.)

missed in Stanislaus County. Defendants moved pursuant to Penal Code sections 1538.5 and 995 to have the action dismissed on the basis that the determination in the Stanislaus proceedings relating to suppression of the evidence seized precluded use of that same evidence in the Siskiyou proceedings. The trial court refused to give collateral estoppel effect to the determination of the Stanislaus Justice Court. On appeal, this court affirmed. We held the "salutary legislative purpose" of Penal Code section 1538.5 does not require its application to subsequent prosecutions on different charges. (93 Cal.App.3d at pp. 992, 995-1000.)

*People* v. *Williams* presented a similar situation. In *Williams,* misdemeanor criminal charges brought against defendant in the Alhambra Municipal Court were dismissed after his motion to suppress pursuant to Penal Code section 1538.5 was granted. (89 Cal.App.3d at p. 1028.) Thereafter, a felony accusation of robbery, separate and distinct from the misdemeanor charges, was filed in the Los Angeles Superior Court. Defendant again moved to suppress, asserting the collateral estoppel effect of the misdemeanor court's determination that the evidence (a gun) was unlawfully seized. The *Williams* court held Penal Code section 1538.5 does not apply to a trial or hearing in a felony cause unrelated to an earlier misdemeanor cause in which a suppression ruling was made. (89 Cal.App.3d at p. 1032.)

*Gerphart* and *Williams* simply hold the ruling on a Penal Code section 1538.5 motion to suppress has no collateral estoppel effect in a subsequent prosecution on unrelated charges. No separate charges unrelated to petitioner's driving under the influence of intoxicating liquor are herein involved. The issue is whether DMV may be permitted to relitigate in a different forum the identical question of whether petitioner was lawfully arrested. *Gephart* and *Williams* are clearly distinguishable.[4]

---

[4]*People* v. *Williams* also states: "We construe [Penal Code] section 1538.5, subdivision (d), which states that suppressed 'evidence shall not be admissible against the movant at any trial or hearing,' as referring to a trial or hearing in the particular cause of action in which the suppression ruling is made. Clearly, it does not refer to a subsequent civil trial or to a subsequent administrative hearing." (89 Cal.App.3d at p. 1032.) We doubt this statement as a correct holding of the law. None of the cases cited by the *Williams* court for the proposition that a ruling on a special motion to suppress is inapplicable to a subsequent civil trial or administrative hearing support such proposition and, indeed, none involved evidence which was the subject of a Penal Code section 1538.5 motion.

*In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734], involved a defendant, a parolee, who was convicted of another offense while on parole. The subsequent conviction was reversed on appeal on the grounds the evidence used at trial was the product of an unreasonable search and a confession unlawfully obtained. In the meantime, defendant's parole had been revoked by the Adult Authority because of the conviction of the subsequent offense. The Supreme Court held the critical responsibilities of the administration of the parole system require the Adult Authority be permitted to consider all relevant evidence (including the product of the illegal search), particularly where the police search was not such as to shock the conscience and the confession was not "coerced." (*Id.,* at pp. 649-652.)

In *People* v. *Hayko* (1970) 7 Cal.App.3d 604 [86 Cal.Rptr. 726], a judgment of conviction

The judgment is affirmed.

Regan, Acting P. J., and Sims, J., concurred.

On September 29, 1983, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied October 27, 1983. Richardson, J., was of the opinion that the petition should be granted.

---

was reversed on the basis that entry by the officers into defendant's home was unlawful and vitiated the arrest and subsequent search and seizure. It was further held, under the authority of *Martinez,* that as the officers' conduct in entering defendant's home in violation of Penal Code section 844 did not " 'shock the conscience' ", the evidence illegally obtained could be considered by the court in determining whether to revoke defendant's probation. (*Id.,* at pp. 608-611.)

In *Governing Board* v. *Metcalf* (1974) 36 Cal.App.3d 546 [111 Cal.Rptr. 724], the court held the rule in criminal cases barring reception of illegally obtained evidence was not applicable to a proceeding dismissing a teacher for sexual misconduct and that evidence of such misconduct was properly admitted in the statutory proceedings to determine defendant's moral fitness to continue to serve as a teacher. (*Id.,* at pp. 549-552.)

None of these decisions held, as suggested in *Williams,* that a ruling on a special motion to suppress pursuant to Penal Code section 1538.5 has no application to subsequent civil or administrative proceedings. To the contrary, the *Martinez* Court stated: "In declining to apply the exclusionary rules to Adult Authority proceedings, we do *not,* of course, intimate that these exclusionary rules are not applicable to other administrative proceedings. . . . In other circumstances, the consequences of excluding some relevant information may not be as dire as they are in the Adult Authority context, and thus our evaluation of the appropriateness of applying the exclusionary rule may well be altered." (*Id.,* 1 Cal.3d at p. 651; italics added; fn. omitted.)