[No. B024233. Second Dist., Div. One. June 30, 1988.]

JACK PAWLOWSKI, Plaintiff and Appellant, v.
A. A. PIERCE, as Director, etc., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to rule 976 of the California Rules of Court, part I of the Discussion is not published, as it does not meet the standards for publication.

694

**COUNSEL**

Milton B. Lipton for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Henry G. Ullerich, Silvia M. Diaz and Martin H. Milas, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff Jack Pawlowski appeals from a judgment denying his petition for a peremptory writ of mandamus and upholding the suspension of his driver's license by the Department of Motor Vehicles (DMV).

### STATEMENT OF FACTS

On February 9, 1986, Officer David Johnson of the Whittier Police Department testified he stopped plaintiff after observing him driving with his vehicle straddling the center divider and stopping with his vehicle partially

in the intersection. His observations of plaintiff and plaintiff's performance on field sobriety tests led him to the opinion plaintiff was driving under the influence of alcohol, and he arrested plaintiff. He advised plaintiff of the need to submit to a chemical test or his driver's license would be suspended or revoked for a period of six months to three years. He gave plaintiff the choice of a breath, blood or urine test; plaintiff said he wanted a breath test. Officer Johnson placed plaintiff in the police vehicle and started for the Norwalk sheriff's station, where breath tests were administered, when plaintiff said he changed his mind and wanted a blood test. Officer Johnson drove him to a hospital and filled out the necessary forms; plaintiff refused to sign them and stated he did not want a blood test, he wanted no test. He then said he would take a breath test. They drove again toward the sheriff's station; during the drive plaintiff said, "[forget] your six months I'll walk."

At this point, Officer Johnson believed plaintiff was not going to take any test; he drove plaintiff to the Whittier police station where they commenced the booking process. Plaintiff then said he wanted a breath test. Officer Johnson said he had twice tried to take plaintiff to the sheriff's station for a breath test, and he was not going to try a third time. He said the only test available at the police station was a urine test; plaintiff refused to take it.

Plaintiff was charged in municipal court with driving under the influence (Veh. Code, § 23152, subd. (a)); the complaint later was amended to add a charge of willful refusal to take a chemical test (Veh. Code, § 23159). Following a jury trial, plaintiff was found not guilty of driving under the influence.[1]

On June 12, 1986, the DMV held a hearing to determine whether plaintiff's driver's license should be suspended for failure to take a chemical test pursuant to Vehicle Code section 13353. The DMV found plaintiff refused the test and suspended his license for a period of six months.

## CONTENTIONS

### I

Plaintiff contends "independent judgement [*sic*] does not apply to court decision."

### II

Plaintiff further contends "collateral estoppe[l] applies to this case."

---

[1] The jury's verdict form contained a finding plaintiff did not refuse to take a sobriety test. This form was not provided to the DMV at its hearing on the suspension of plaintiff's driver's license for failure to take a chemical test.

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . .

### II

Plaintiff further contends "collateral estoppe[l] applies to this case." We disagree.

The trial court found the DMV was not collaterally estopped from finding plaintiff refused to submit to a chemical test due to the municipal court jury's verdict that he did not refuse to take the test. It based its finding on *Lofthouse* v. *Department of Motor Vehicles* (1981) 124 Cal.App.3d 730 [177 Cal.Rptr. 601], and specifically on that case's holding there is no privity between the prosecutor in criminal proceedings and the DMV (at p. 737).

In *Lofthouse,* decided by Division Two of this district, plaintiff was arrested for driving under the influence; he refused to submit to a chemical test. The municipal court dismissed the criminal complaint against him on the ground of lack of jurisdiction. The DMV then conducted a formal evidentiary hearing; it found plaintiff's arrest was lawful—a prerequisite to suspension of his driver's license—and he refused to submit to the required chemical test; it therefore suspended his driver's license. On plaintiff's petition, the trial court issued a writ of mandate commanding the DMV to vacate the suspension; the DMV appealed. (124 Cal.App.3d at pp. 733-734.)

On appeal the question was whether the DMV was collaterally estopped from finding plaintiff's arrest was lawful. ■ The court noted the elements of collateral estoppel are: "(1) the issue decided in a prior adjudication was identical with that presented in the action in question, (2) there was a final judgment on the merits in the prior adjudication and (3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior adjudication." (124 Cal.App.3d at p. 736.) ■ The court further noted a well established rule a prior acquittal in criminal proceedings does not have a res judicata effect in later civil or administrative disciplinary proceedings. (*Ibid.*)

■ The court then turned to the facts before it. The validity of plaintiff's arrest was not actually litigated in the criminal proceedings. (124

* See footnote, *ante,* page 692.

Cal.App.3d at p. 737.) The court also concluded the DMV was not in privity with the prosecutor in the criminal proceedings: "The DMV in its role of controlling the licensing of drivers is not in privity with the prosecutor in a criminal proceeding growing out of the driving of a motor vehicle. The DMV has no power to control the criminal proceedings nor to intervene therein." (*Ibid.*) Thus, there was no collateral estoppel and the trial court was ordered to deny the writ. (*Id.,* at p. 738.)

On the question of privity, the court disagreed with the earlier decision of *Shackelton* v. *Department of Motor Vehicles* (1975) 46 Cal.App.3d 327 [119 Cal.Rptr. 921], decided by Division Four of this district. (*Lofthouse, supra,* 124 Cal.App.3d at p. 738.) The *Shackelton* court held, without discussion or analysis, the DMV was in privity with the prosecutor. (46 Cal.App.3d at pp. 330-331.)

Reaching a conclusion opposite from *Lofthouse* on the issue of privity is *Buttimer* v. *Alexis* (1983) 146 Cal.App.3d 754 [194 Cal.Rptr. 603], from the Third District. *Buttimer* also dealt with the question whether the DMV was collaterally estopped from making an independent finding on the lawfulness of plaintiff's arrest.

In determining the question of privity, the court turned to *People* v. *Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321], in which the question was whether a prior favorable resolution by an administrative agency on the issue of welfare fraud barred litigation of the issue in criminal proceedings. The *Sims* court stated: " ' "Privity is essentially a shorthand statement that collateral estoppel is to be applied in a given case; there is no universally applicable definition of privity." [Citation.] The concept refers "to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel." [Citations.] [¶] Here, the District Attorney's office, which represents the party to be estopped, and the County, the unsuccessful party in the prior litigation, are "sufficiently close" to warrant applying collateral estoppel. Both entities are county agencies that represented the interests of the State of California at the respective proceedings. The District Attorney's office represents the State of California in the name of the "People" at criminal prosecutions. [Citation.] At fair hearings, the county welfare department acts as the "agent" of the state. "[T]he courts have held that the agents of the same government are in privity with each other, since they represent not their own rights but the right of the government. . . ." [Citations.]' (32 Cal.3d at pp. 486-487; fn. omitted.)" (*Buttimer, supra,* 146 Cal.App.3d at p. 760.)

The *Buttimer* court saw no reason for finding the district attorney and the DMV were not in privity. (*Ibid.*) While it was true the DMV had no control

over the actions of the district attorney, both represented the interests of the state—the district attorney in criminal matters and the DMV in its hearings. (*Ibid.*) Since the state was the real party in interest in both proceedings, its representatives were in privity for purposes of collateral estoppel. (*Ibid.*)

The quotation from *Sims* in *Buttimer* is incomplete, in that it omits the *Sims* court's explanation of "sufficiently close." *Sims* added: "The close association between the County and the district attorney's office can also be seen from the fact that the agencies operate jointly in investigating and controlling welfare fraud. . . . [T]he County [was required] to establish a special investigative unit (SIU) to investigate suspected welfare fraud and to function as a liaison between the County and law enforcement agencies. The information gathered by the SIU is used by both the County and the district attorney. When evidence of fraud is uncovered, the SIU must request issuance of a criminal complaint from the district attorney and provide him with all records and reports pertinent to the case. [Citation.]

"In addition, an attempt by the County to obtain restitution of overpayments made to a welfare recipient suspected of fraud is sufficient to satisfy the mandate of [Welfare and Institutions Code] section 11483 that the district attorney seek restitution before commencing criminal proceedings. [Citation.] Finally, when requested, the County must provide documentary evidence to the district attorney and ensure the appearances of investigators and other county officials at hearings and trials. [Citation.] In view of this close association between the County and the district attorney in controlling welfare fraud, and the fact that both entities are county agencies representing the state, this court finds that the County and the district attorney were in privity with each other." (32 Cal.3d at pp. 487-488, fns. omitted.)

In contrast, in the case of prosecutions or administrative actions for failure to submit to a chemical test, there is no mandated joint operation between district attorney and DMV. Criminal and administrative proceedings are independent of one another. Under *Sims,* a finding of privity depends upon a close association of entities representing the state's interests; inasmuch as there is no such close association here, there can be no privity between the district attorney and the DMV, notwithstanding the fact they both represent the state's interests. Thus, we agree with *Lofthouse* and the trial court that there is no privity here, and we disagree with *Shackelton* and *Buttimer*. There being no privity, there can be no collateral estoppel. (*Lofthouse, supra,* 124 Cal.App.3d at p. 736.)

An additional element of collateral estoppel is identity of issues. (*Ibid.*) In a criminal proceeding, there must be a finding the refusal to submit to a

chemical test was willful, before a violation of Vehicle Code section 23159 can be found. ■■ Section 13353, under which the DMV operates in suspending a driver's license for refusal to submit to a chemical test, does not require the element of willfulness, being civil in nature. (*McDonnell* v. *Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 662 [119 Cal.Rptr. 804].) State of mind is not an issue. (*Gobin* v. *Alexis* [1984] 153 Cal.App.3d [641] at p. 650 [200 Cal.Rptr. 397].) The issues are not identical; one can be subject to DMV action under section 13353 without having violated section 23159. Again, this would preclude collateral estoppel. ■ Accordingly, the trial court did not err when it found the DMV was not collaterally estopped from deciding the issue of plaintiff's refusal to take a chemical test.[2]

It remains to be determined whether the trial court's findings and judgment are supported by substantial evidence. ■■ Section 13353 is violated when a driver's response to the request he submit to a chemical test fairly may be interpreted as a refusal to take a test. (*Gobin* v. *Alexis, supra,* 153 Cal.App.3d at p. 650; *Buchanan* v. *Department of Motor Vehicles* (1979) 100 Cal.App.3d 293, 299 [160 Cal.Rptr. 557].)

■ Officer Johnson's testimony supports a finding plaintiff refused to take a chemical test; plaintiff's requests to take certain tests, his repeated changes of mind and his comment about walking fairly may be interpreted as a refusal to take any test and a willingness to accept suspension of his driver's license instead. Therefore, there is substantial evidence to support the trial court's judgment upholding the DMV's findings and suspension of plaintiff's license, and denying plaintiff a writ of mandate.

The judgment is affirmed.

Devich, J., and Ortega, J., concurred.

---

[2]Defendant argues the municipal court's jury verdict form, which indicates the jury's finding plaintiff did not refuse to take a chemical test, was not properly before the superior court in the writ proceeding, in that it was not before the DMV. We need not address this issue, inasmuch as there is no collateral estoppel in any event.