Filed 8/9/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| METABYTE, INC., | B319338 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV22685) |
| v. | |
| TECHNICOLOR S.A. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge. Reversed with directions to grant leave to amend.

Law Offices of David H. Schwartz, David H. Schwartz, Nancy Chung; Joseph A. Hearst for Plaintiff and Appellant.

Kirkland & Ellis, David Horowitz, Michael Shipley and Robert Carnes for Defendants and Respondents.

————————————

In a case which seems destined for the pages of a civil procedure casebook, Metabyte, Inc., appeals from the trial court's judgment of dismissal and order sustaining Technicolor's demurrer without leave to amend. This 2021 action represents Metabyte's fourth attempt to hold Technicolor liable for Technicolor's allegedly improper auction of a patent portfolio in 2009.[1] The first two actions were brought in France, where Technicolor is headquartered. Metabyte brought a proceeding under Article 145 of the French Code of Civil Procedure (Article 145 proceeding), and then filed a criminal "plainte" against Technicolor. After the French courts ruled they lacked jurisdiction in the criminal action, Metabyte brought an action in United States District Court in California alleging a federal RICO claim and several state law causes of action. After the district court ruled that equitable tolling did not apply to its RICO claim as a matter of federal law, Metabyte dismissed the federal action and brought its state law claims in Los Angeles County Superior Court. The trial court granted Technicolor's demurrer without leave to amend, finding that Metabyte's Article 145 proceeding in France did not equitably toll the statute of limitations, and so Megabyte's action was barred by the statute of limitations.

---

[1] Metabyte brought this action against Technicolor S.A., Technicolor USA, Inc. (Technicolor USA), Technicolor International SAS (Technicolor International), and Thomson Licensing SAS. The latter three parties are alleged to be subsidiaries of Technicolor S.A., and for purposes of this demurrer we will generally refer to them collectively as Technicolor.

2

Metabyte contends the trial court erred in finding equitable estoppel applies only where a plaintiff invokes remedies designed to lessen the extent of a plaintiff's injuries or damages, with the result that Article 145 proceeding in France could not support equitable tolling because it did not provide such a remedy. Technicolor defends the trial court's ruling but devotes more of its energies to its contentions that even if equitable tolling did apply, the order should be affirmed by applying the doctrines of issue preclusion and judicial estoppel.

We affirm the trial court's ruling sustaining the demurrer on the alternate ground that Metabyte failed to adequately plead facts showing that its decision to proceed in France was objectively reasonable and subjectively in good faith. However, we grant Metabyte leave to amend. We therefore reverse the judgment and remand for further proceedings.

## BACKGROUND

Metabyte is a California corporation. Metabyte's subsidiary Metabyte Networks, Inc (MNI) owned patents on digital video recording (DVR) technology used by cable television companies in set top boxes. Metabyte and its CEO and principal shareholder Manu Mehta owned the stock of MNI. At some point, Metabyte sold shares in MNI to an entity eventually known as Technicolor USA, but it retained majority ownership of MNI's stock. When MNI needed additional financing, it sold shares to Canal+ Technologies, a corporation in which Technicolor S.A. was a minority shareholder. An entity which became Technicolor International then purchased a controlling interest in Canal+ Technologies, giving Technicolor majority ownership of MNI stock.

3

At some point, Technicolor decided to liquidate MNI. In July 2001, liquidation preferences were set. Common shareholders such as Metabyte could not receive any money from the liquidation of assets until the preferred shareholders received over $16.4 million. In December 2009, Technicolor forced an auction of MNI's patent portfolio. A Technicolor subsidiary bought the patents for $1 million. In October 2010, Technicolor dissolved MNI.

In its complaint in this action. Metabyte alleges: "On or about June 19, 2012, Mr. Mehta saw a news report that TECHNICOLOR, SA was being investigated by French judicial authorities for wrongfully acquiring the assets of Quinta, a company in which Technicolor was an investor. Mr. Mehta contacted the French lawyers for Quinta. From the news report and in preliminary conversations with Quinta's counsel, Mr. Mehta learned that Quinta contended that TECHNICOLOR had invested in Quinta and then destroyed its business, driving it into bankruptcy, while also acquiring Quinta's technology for € 700,000 when it was valued at over € 36,000,000. Upon learning of Quinta's allegations against TECHNICOLOR, Mr. Mehta for the first time developed a reasonable suspicion that the MNI patent portfolio in 2009 was worth substantially more than the $16.4 Million liquidation preference and that METABYTE had been injured by being cheated out of its right to a substantial portion of the liquidation value of MNI."

Metabyte retained Quinta's lawyers and began legal proceedings in France. Technicolor SA is a French corporation with its headquarters in Paris, France. According to Metabyte's complaint, on April 29, 2013, about 10 months after it discovered Technicolor's wrongful conduct, Metabyte "commenced a

4

proceeding under Article 145 of the French Civil Procedure Code in the Commercial Court of Nanterre, France, alleging fraud and breach of fiduciary duty on the part of the TECHNICOLOR Defendants. The initial proceeding was to obtain authorization to seize relevant paper and electronic documents related to METABYTE's claims for having been damaged by being cut out of participation in the liquidation of MNI's patent portfolio and other assets in 2009." Metabyte alleged that "[i]n civil litigation in France, Defendants cannot be compelled to produce documents relevant to the litigation and face no penalty if such documents are destroyed. Therefore, it is standard procedure under French law for civil litigants to commence litigation against a defendant by seeking an order from a French Court to a French Bailiff to have the Bailiff appear, unannounced at the defendants' business premises and seize relevant documents and records." "Under French law, a proceeding under Article 145 tolls the statute of limitations for bringing a civil complaint."

Metabyte quickly obtained its order and on "May 21, 2013, a bailiff seized some of the TECHNICOLOR documents being sought (the bailiff has never received all the documents sought). The May 21, 2013, seizure by the Bailiff of TECHNICOLOR documents gave TECHNICOLOR notice that METABYTE was seeking recovery of damages through the French legal system for its share of the liquidation value of MNI."

According to the allegations of the complaint, "TECHNICOLOR responded to the document seizure by requesting that the French court nullify the order granting METABYTE's petition. On February 26, 2014, the Court denied TECHNICOLOR's challenge to the order but denied METABYTE access to the seized documents. METABYTE appealed that order

to the Versailles Court of Appeals, and, on May 7, 2015, the Versailles Court of Appeals ruled that METABYTE should have access to the documents and ordered Technicolor to pay Metabyte 5,000€ for legal costs.  TECHNICOLOR then appealed to the Cour de Cassation, the French Supreme Court, to nullify the May 7, 2015, judgment.  On November 3, 2016, the Cour de Cassation ruled in favor of METABYTE, including an order that TECHNICOLOR pay METABYTE 3,000€ for legal costs.  Despite the orders of the Commercial Court and the Cour de Cassation, the bailiff has released only a portion of the documents seized. The bailiff withheld and continues to withhold the most important documents because on one hand Technicolor had threatened the bailiff with legal action if the Bailiff released all the documents, and on the other hand Technicolor had procured an order from the Paris Bar prohibiting H lawyer from requesting the bailiff for access to these documents."

The complaint alleges that "In addition to pursuing a private civil complaint, a party wronged by conduct which is criminal under French law may initiate a criminal complaint with a French prosecutor to investigate the alleged criminal acts of the defendant and the wronged party can also seek damages arising from those criminal acts.  This is done first by filing a simple criminal complaint followed by the filing of a 'Plainte avec Constitution de Partie Civile.' "  Perhaps in response to the difficulties in the civil proceedings, Metabyte filed "a simple criminal complaint on September 4, 2016, and then on June 2, 2017, filed a Plainte avec Constitution de Partie Civile with the Tribunal de Grand Instance de Nanterre, France seeking compensation in damages from the Defendants as well as seeking

the Tribunal's assistance in getting the withheld documents from the bailiff."

Metabyte also alleges that "[u] nder French law the Prosecutor handling a criminal complaint has the discretion to inform the defendant of investigation and filing of the Plainte avec Constitution de Partie Civile. METABYTE is informed and believes that TECHNICOLOR learned of the criminal investigation and Plainte avec Constitution de Partie Civile in the second half of 2016."

The criminal action proved not to be viable. "On November 23, 2018, the prosecuting magistrate found that France lacked jurisdiction to proceed against TECHNICOLOR or award damages to METABYTE. METABYTE appealed the magistrate's ruling. On August 12, 2019, the French appeals court affirmed the ruling of the magistrate finding that France lacked jurisdiction over the matter and that the matter belonged in courts in the United States."

On August 10, 2020, approximately a year after the French courts found a lack of jurisdiction and five months after COVID shut down much of the United States, Metabyte filed a complaint in the United States District Court for the Northern District of California. The complaint alleged causes of action under the federal RICO statute and California state law. Technicolor filed a motion to dismiss pursuant to Federal Rules of Civil Procedure, rule 12(b)(6), which the district court granted. On April 30, 2021, the district court issued a written order that equitable tolling did not apply to RICO claims as a matter of federal law. The district court also ruled that Metabyte's state law claims were barred by the statute of limitations because, as relevant here, California's equitable tolling doctrine "is available only when, through those

7

proceedings, a plaintiff 'pursues' one or more 'remedies . . . designed to lessen the extent of his injuries or damages.' [(*Cervantes v. City of San Diego* (9th Cir. 1993) 5 F.3d 1273, 1275 (*Cervante*).)] . . . [T]he Article 145 proceedings could have provided Metabyte with relevant documents, but could not have provided any relief that would 'lessen the extent' of Metabyte's 'injur[y] or damages.' " The district court nevertheless granted MNI leave to file an amended complaint within 45 days of the date of the order.

On June 11, 2021, Metabyte filed a notice of dismissal which stated, "NOTICE IS HEREBY GIVEN that pursuant to Fed.R.Civ.Pro. 41(a), plaintiff voluntarily dismisses the above-captioned action without prejudice."

On June 17, 2021, Metabyte filed this action in Los Angeles County Superior Court, alleging causes of action for breach of fiduciary duty, fraud, intentional interference with contractual relations or prospective economic advantage, breach of the implied covenant of good faith and fair dealing, and a violation of Business and Professions Code section 17200. The parties agree that the longest statute of limitations period is four years. In the absence of delayed discovery and equitable tolling, this action would have become time barred in 2013.

Technicolor filed a demurrer to this complaint on the ground that the action was barred by the statute of limitations. The trial court denied Technicolor's request to take judicial notice of correspondence between the parties concerning the patent auction and the French proceedings. The trial court granted judicial notice of the pleadings in district court but stated it would not consider the truth of the matters asserted therein.

8

The trial court found Metabyte had adequately pleaded delayed discovery, but also found the equitable tolling doctrine did not apply to the Article 145 proceedings because that doctrine requires a plaintiff to pursue a legal remedy designed to lessen the extent of its injuries or damages, and an Article 145 proceeding does not do that. The trial court sustained the demurrer without leave to amend and this appeal followed.

On appeal, Technicolor repeats its request for judicial notice on appeal. We grant the request for judicial notice of the filings in the federal case, with the exception of the Marie Danis declaration. Metabyte opposes judicial notice of the Marie Danis declaration and its description of French law and the French proceedings. Metabyte states that it does not agree with the factual contentions and characterization of French law. Metabyte also states that it does not concede that the translations of French documents are accurate. We deny the request for judicial notice of the Danis declaration.[2] Because the French law in the Danis declaration is neither clear nor undisputed, and the same can be said for the history of the proceedings, it is an inappropriate matter for judicial notice. If necessary, these disputed factual issues may be determined in the trial court after Metabyte files its amended complaint.

We also deny the request for judicial notice of the Article 145 application and the rulings of the French courts, and the

---

[2] We note that Technicolor represents that the trial court in this matter took judicial notice of the Danis declaration, but this is only partially correct. This declaration was filed in the federal action, and although the trial court took judicial notice of the documents filed in that action, it expressly stated that it was not considering them for the truth of the matters asserted therein.

9

translations thereof.  Technicolor asserts they are offered in support of their judicial estoppel argument, but, as we discuss below, under the current allegations of the complaint, Technicolor has failed to explain how any such statements would qualify as the basis of judicial estoppel.

## DISCUSSION

"We review the trial court's ruling that sustained the demurrer to each cause of action of the pleading in accordance with established standards.  'A demurrer tests the sufficiency of the complaint as a matter of law; as such, it raises only a question of law.'  [Citation.]  ' "The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded.  [Citations.]  The court does not, however, assume the truth of contentions, deductions or conclusions of law.  [Citation.]  The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken.  [Citations.]'  [Citation.]  However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory.  [Citation.]" [Citation.]' " (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 425.)

The material allegations in the action filed by plaintiff must be accepted as true.  The allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties.  (*San Mateo, supra,* 213 Cal.App.4th at p. 425.)  We may affirm a trial court judgment on any basis presented by the record whether or not relied upon by the trial court.  (*Id.* at pp. 425–426.)  Because the trial court's determination is made as a matter of law, we review the ruling de novo.  (*Id.* at p. 426.)

10

A.     Issue Preclusion Does Not Apply

Although Technicolor did not raise an issue preclusion claim in the trial court, Technicolor contends the order sustaining the demurrer should be upheld because the "undisputed record establishes that, as a matter of law," the federal district court's dismissal of Metabyte's action has preclusive effect.  It does not.

A motion to dismiss pursuant to Federal Rules of Civil Procedure, rule 12(b)(6) is the equivalent of a demurrer.  (*Estate of Tucker ex rel. Tucker v. Interscope* (9th Cir. 2008) 515 F.3d 1019, 1033, fn. 14.)  A voluntary dismissal by notice pursuant to Federal Rules of Civil Procedure, rule 41(a)(1) "is presumed to be 'without prejudice' unless it states otherwise." (*Commercial Space Management Co. v. Boeing Co.* (9th Cir. 1999) 193 F.3d 1074, 1076.)  Under federal law, " '[d]ismissal . . . without prejudice' is a dismissal that does not 'operat[e] as an adjudication upon the merits,' [(Fed. Rules of Civ. Proc., rule 41(a)(1))], and thus does not have a res judicata effect." (*Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384, 396.)  Nevertheless, because California substantive law was at issue in the federal action, the preclusive effect of the federal action is determined by California law.  (*Semtek Int'l Inc. v. Lockheed Martin Corp.* (2001) 531 U.S. 497, 508.)  The result is the same.

California law is clear that a plaintiff may obtain a voluntary dismissal of its action without prejudice following a trial court's order sustaining a demurrer with leave to amend, as long as the plaintiff does so before the time for leave to amend has expired.  (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 789–790 (*Wells*); see *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 785.)  In contrast, a dismissal without prejudice is not available if the demurrer is sustained

11

without leave to amend, or if the demurrer is sustained with leave to amend but the plaintiff fails to file an amended complaint within the time allotted to do so.

Technicolor is mistaken in arguing that the nature of a dismissal does not matter for purposes of issue preclusion. The effect of such a dismissal without prejudice in a civil action is clear under California law. " 'A dismissal "without prejudice" necessarily means without prejudice to the filing of a new action on the same allegations, so long as it is done within the period of the appropriate statute of limitations. [Citations.]' [Citation.] Thus, subject to the statute of limitations, [plaintiff] had the right to file a new action . . . containing some, but not all, of the claims previously set forth in Case No. 1. In fact, following its voluntary dismissal of Case No. 1, [plaintiff] could have filed an action identical to the one it dismissed." (*Cardiff Equities, Inc. v. Superior Court* (2008) 166 Cal.App.4th 1541, 1550.)[3]

Although Technicolor has cited four cases in which a ruling or order was held final for issue preclusion purposes when the prior proceeding was dismissed in whole or part, none clearly involve a dismissal without prejudice. More importantly, two of the cases involve specific statutory provisions concerning the

---

[3] With respect to rulings on demurrers, even when an action is dismissed with prejudice following the sustaining of a demurrer, "the res judicata effect . . . is of limited scope. . . . [W]e have previously cautioned that, 'It is a judgment on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action . . . . If, on the other hand, new or additional facts are alleged that cure the defects in the original pleading, it is settled that the former judgment is not a bar to the subsequent action whether or not plaintiff had an opportunity to amend his complaint.' " (*Wells, supra,* 29 Cal.3d at p. 789.)

12

preclusive effect of the order at issue (*Rymer v. Hagler* (1989) 211 Cal.App.3d 1171 (*Rymer*) and *Buttimer v. Alexis* (1983) 146 Cal.App.3d 754 (*Buttimer*)),[4] while the third one involves a post-judgment settlement in which the trial court's statement of decision was vacated but the judgment remained (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657). These cases do not support the application of issue preclusion in the present case, which does not involve the Penal Code, the

---

[4]     In *Buttimer*, the prior ruling was the grant of a motion to suppress evidence pursuant to Penal Code section 1538.5, following which the prosecutor dismissed the charges. (*Buttimer*, *supra*, 146 Cal.App.3d at p. 761.) Section 1538.5, however, has its own specific rules about the collateral estoppel effect of rulings under its provisions, including the effect of dismissals without prejudice. (See, e.g., *People v. Superior Court (Jimenez)* (2002) 28 Cal.4th 798, 805.)

Similarly, *Rymer* involved the effect of a dismissal of a workers compensation claim after the WCAB judge issued an order on a substantive issue which was a final order under the Labor Code. (*Rymer*, *supra*, 211 Cal.App.3d at pp. 1176–1177.) Like Penal Code section 1538.5, the Labor Code includes provisions relating to the preclusive effect of what the Labor Code deems to be a final order. The plaintiff in *Rymer* did not seek review of the subject final order. "When a party fails to seek review [of the order] within the time allotted, both the WCAB and the court is without jurisdiction to hear future challenges to the decision. ([Lab. Code,] §§ 5901, 5950; *Scott v. Workers' Comp. Appeals Bd.* (1981) 122 Cal.App.3d 979, 984 [176 Cal.Rptr. 267].)" (*Rymer,* at p. 1182; *Maranian v. Workers' Comp. Appeals Bd.* (2000) 81 Cal.App.4th 1068, 1076.) It would clearly render meaningless the Labor Code's bar on future challenges to the order if a plaintiff could dismiss his worker's compensation claim and start anew in the superior court.

13

Labor Code, or the effect of a post-judgment settlement agreement. The fourth case, *Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, involves a demurrer sustained without leave to amend. Thus, the plaintiff was not entitled to a dismissal without prejudice. This case is also not helpful.

B.     Equitable Tolling May Apply

The trial court in this matter sustained Technicolor's demurrer because it believed that equitable tolling requires "a legal remedy that is 'designed to lessen the extent of his injuries or damages.' (*Addison v. State* (1978) 21 Cal.3d 313, 317.)" The court found "The injury and damage claimed here is the economic loss suffered when Defendant allegedly rigged an auction to sell off MNI's assets at a discount. A preliminary discovery procedure designed to prevent the destruction of evidence (see Compl. ¶ 43) does not address or lessen this injury." The court continued, "In California, pre-lawsuit evidence mechanisms, like the Article 145 proceeding, are insufficient to constitute the filing of a 'suit' for statute of limitations purposes. (*Orr v. City of Stockton* (2007) 150 Cal.App.4th 622 [(*Orr*)] [pre-suit discovery proceeding filed under *California Code of Civil Procedure*, [s]ection 2035.010 did not satisfy the filing of a suit for statute of limitations purposes under the Torts Claims Act].)"

The trial court read *Orr* too broadly. The opinion in that case is very narrow: the Court of Appeal explicitly stated that its "analysis turns solely on the interpretation of section 945.6, subdivision (a)(1)." (*Orr, supra*, 150 Cal.App.4th at p. 629.) That section involves the Tort Claims Act and provides that " '[a]ny suit brought against a public entity on a cause of action for which a claim is required to be presented in accordance with [the Tort

14

Claims Act] must be commenced' " within six months after written notice of claim rejection.  Specifically, the court focused on the meaning of the term "suit."  (*Orr,* at p. 629. Italics omitted.)  *Orr* did not consider equitable tolling or any proceedings under French civil law.  We are not concerned in this case with the meaning of the term "suit" or California discovery procedures.

The trial court also overlooked more recent cases, in which the California Supreme Court has made clear that "pursuit of an alternate remedy is not always required for equitable tolling. The doctrine is applied flexibly to 'ensure fundamental practicality and fairness.' " (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 658.)  The Supreme Court recently reaffirmed this line of cases noting that "our past cases stop short of categorically conditioning tolling on a plaintiff's pursuit of a viable remedy.  [(*Ibid.*)]  The doctrine is sufficiently supple 'to "ensure fundamental practicality and fairness." ' (*Ibid.*)  And even in cases where a party seeking tolling pursued an alternative remedy, we've concluded that pursuit of a remedy 'embarked upon in good faith, [yet] found to be defective for some reason,' doesn't foreclose a statute of limitations from being tolled." (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 725 (*Saint Francis*).)

In the more recent discussion of the equitable tolling doctrine in *Saint Francis*, the Court explained that "one scenario under which equitable tolling may apply [is when] a plaintiff pursues one of several available legal remedies, causing it to miss the statute of limitations for other remedies it later wishes to pursue.  Yet such facts are far from the only circumstances under which the doctrine may apply.  To determine whether equitable

15

tolling may extend a statute of limitations, courts must analyze whether a plaintiff has established the doctrine's three elements: timely notice to the defendant, lack of prejudice to the defendant, and reasonable and good faith conduct by the plaintiff." (*Saint Francis, supra,* 9 Cal.5th at pp. 725–726.)

Although the trial court did not apply the three-part analysis of *Saint Francis*, Technicolor contends that Metabyte's failure to plead the pursuit of an alternative legal remedy seeking to lessen its injuries or damages goes to all three elements of the doctrine. This is, in effect, an argument that only the pursuit of such a remedy can qualify for equitable tolling. That argument is simply not consistent with the clear statement in *Saint Francis* that pursuit of an alternate legal remedy is not the only factual scenario in which equitable tolling may apply. Put differently, if the notice, no prejudice, and reasonable elements of equitable tolling could be satisfied only by pursuing a legal remedy to lessen damages in a different forum, then a legal remedy to lessen damages would de facto be a requirement of equitable tolling. It is not.

As the Ninth Circuit has perceptively summarized, "each of the three factors in California's test for equitable tolling requires a *practical* inquiry. At a minimum, determining the applicability of equitable tolling necessitates resort to the *specific* circumstances of the prior claim: parties involved, issues raised, evidence considered, and discovery conducted. Thus, the question ordinarily requires reference to matters outside the pleadings, and is not generally amenable to resolution on a [Federal Rules of Civil Procedure,] [r]ule 12(b)(6) motion, where review is limited to the complaint alone. [Citations.] [¶] California's fact-intensive test for equitable tolling is more appropriately applied at the

16

summary judgment or trial stage of litigation." (*Cervantes, supra,* 5 F.3d at p. 1276, fn. omitted.) That is the situation here. Still, Metabyte, like all plaintiffs seeking equitable tolling, must allege facts which if true would satisfy the three factors.

As we discuss below, Metabyte has alleged facts sufficient to satisfy the first two factors. Technicolor does not agree with those facts. Technicolor argues that the failure to pursue a legal remedy goes to the notice factor because "a completely unrelated first action affords the defendant little notice of anything. (See *Daviton v. Columbia/HCA Healthcare Corp.* (9th Cir. 2001) 241 F.3d 1131, 1141.)" However one characterizes the Article 145 proceeding as alleged in the complaint, it cannot fairly be described as "completely unrelated" to this action. In *Daviton,* the Court noted that California's law of equitable tolling "requires that the same wrong serve as the predicate for the earlier and later proceedings to make sure defendant received proper notice. . . . [¶] While it is probably true that knowing what remedy plaintiff is seeking will affect how defendant prepares to defend itself, once defendant is aware of the wrong, the purpose of the statute of limitations has been served." (*Ibid*.) Here, as alleged, the same wrong served as the predicate for both the Article 145 proceeding and this action: Technicolor's alleged wrongful auction of MNI's patent rights. To the extent that Technicolor contends the destruction of documents was the wrong serving as the predicate to the Article 145 proceedings, Metabyte has alleged, in effect, that destruction of documents is not a wrong under French law. Thus, Metabyte has alleged sufficient facts to satisfy the notice requirement.[5]

---

[5] Technicolor specifically contends Metabyte failed to allege Technicolor received notice of the French criminal proceeding.

17

Technicolor next contends that the failure to pursue a legal remedy goes to the prejudice factor "because a defendant can't adequately investigate and prepare a defense based on the facts of a completely unrelated action. (See [*Cervantes, supra,* 5 F.3d at p.] 1275.)" Again, as alleged, the Article 145 proceeding is not completely unrelated to the present action. Further, in *Cervantes*, the court explained "the focus of [the prejudice] factor is whether the facts of the two claims are 'at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second.' [(*Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 925.)] 'The critical question is whether notice of the first claim affords the defendant an opportunity to identify the sources of evidence which might be needed to defend against the second claim.' [Citation.]" (*Cervantes,* at p. 1276.) Here, as alleged, the facts of wrongdoing in the Article 145 proceeding are very similar, if not identical to, the facts alleged in this action, and Technicolor actively contested the Article 145 proceeding. This process, as alleged, certainly gave Technicolor the opportunity to prepare a defense.

Finally, Technicolor contends that failure to pursue an alternate legal remedy also goes to the reasonableness factor because "the pursuit of a lesser relief—particularly where that lesser relief is unnecessary for the pursuit of relief that will actually lessen the damage or injury claimed—is not diligent pursuit of one's claims. (See, e.g., *Tannhauser v. Adams* (1947)

---

While we agree that Metabyte provided only a broad six-month period, as we discuss below, the Article 145 proceeding appears to have still been pending in France during this period, tolling the statute of limitation until the end of the period. Thus, notice during that time was sufficient.

18

31 Cal.2d 169, 177 (*Tannhauser*).)" We do not see the words "lesser" or "unnecessary" anywhere in *Tannhauser*. The page citation provided by Technicolor contains a discussion of the plaintiff's failure to diligently pursue his first action, which was dismissed for lack of prosecution. Equitable tolling, however, may apply "even in circumstances where the plaintiff voluntarily terminated the alternate proceeding." (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 111.)

Technicolor has nevertheless raised, perhaps inadvertently, the key issue on this appeal concerning the equitable tolling doctrine: what are the requirements of the third factor—reasonable and good faith conduct by plaintiff—and has Metabyte satisfied them. As the Supreme Court has explained, this element plays a key role in limiting the scope of equitable tolling. This element includes both an objective and subject requirement because doing so "precludes the doctrine from being 'a cure-all for an entirely common state of affairs,' while ensuring that it provides a narrow form of relief in 'unusual circumstances' when justice so requires." (*Saint Francis, supra*, 9 Cal.5th at p. 730.) Conversely, "if we were to apply equitable tolling to situations when a party demonstrates only reasonable conduct or good faith—but not both—we would risk shaping the doctrine into one that becomes a norm instead of an exception." (*Ibid.*)

Even a preliminary assessment of whether Metabyte's filing of the Article 145 proceedings satisfies the third factor requires information not alleged in the complaint. The current allegations show that Metabyte acted reasonably in filing an Article 145 proceeding, but only if it were objectively reasonable to try to hold Technicolor accountable in a French court. Put differently, if pursuing a civil action in France was reasonable,

19

then, under the allegations of the complaint, it was reasonable to begin that process with an Article 145 proceeding. But that does not answer the question of whether pursuing legal action in France was objectively "fair, proper, and sensible in light of the circumstances." (*Saint Francis, supra,* 9 Cal.5th at p. 729.) Similarly, the complaint does not allege facts which would answer the question of whether Metabyte acted in good faith, that is, with a " 'state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, . . . being faithful to one's duty or obligation.' " (*Ibid*.)[6] While the assessment of this factor will almost certainly require resolution of factual disputes, the complaint must at least allege facts which could support such a conclusion. It currently does not.

Accordingly, we affirm the order sustaining the demurrer on the alternate ground that the complaint fails to allege facts sufficient to show that Metabyte acted objectively reasonably and subjectively in good faith in electing to seek to hold Technicolor liable in France. Metabyte, however, is given leave to amend its complaint to cure this deficiency. We reverse the order insofar as it requires a legal remedy which seeks to lessen damages and which holds that Article 145 proceedings can never satisfy the requirements for equitable proceedings.

C. The Delayed Discovery Allegations Are Adequate

Technicolor contends the demurrer should be sustained on the alternate ground that Metabyte failed to allege facts sufficient to support the application of the delayed discovery rule.

---

[6] To be clear, nothing in the allegations of the complaint would bar a finding of objective reasonableness or subjective good faith.

The trial court expressly rejected this claim, finding that the complaint "[r]ead liberally, . . . sufficiently establishes that Plaintiff did not discover its injury until 2012." Technicolor contends that the trial court erred. We do not agree.

"A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. [Citations.] . . . [B]y [previously] discussing the discovery rule in terms of a plaintiff's suspicion of 'elements' of a cause of action, [we were] referring to the 'generic' elements of wrongdoing, causation, and harm." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*).) Put differently, under the discovery rule, "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110.)

We note preliminarily that resolution of the statute of limitations issues, including delayed discovery, is normally a question of fact. (*Fox, supra*, 35 Cal.4th at p. 810.) For purposes of a demurrer, we take the allegations of the complaint as true, and liberally construe them.

In sum, as set forth in the Background section above, Metabyte alleged it was suspicious of wrongdoing, that is, that the auction was rigged, but not suspicious that it was injured by the rigging; this is necessarily an allegation that it was not suspicious of causation. Metabyte clearly alleged it believed the patents were worth only a few million dollars and that the patents would have had to be worth over $16 million for

21

Metabyte to have suffered damages. Put differently, the rigging of the auction may have resulted in an artificially low price for the patents, but Metabyte believed that it suffered no injury as a result of that low price.

Technicolor contends Metabyte failed to allege what new facts it learned in June 2012 that were essential to its complaint. Not so. Mehta alleged that upon reading about the Quinta lawsuit, he learned there was evidence that Technicolor had invested in Quinta, forced it into bankruptcy and allegedly wrongfully acquired Quinta's technology assets for € 700,000 when the technology was actually worth € 36,000,000. This made Mehta suspicious that the MNI patent portfolio was worth more than $16 million. Read liberally, Technicolor's behavior with Quinta, culminating in a huge disparity in price between what Technicolor paid and what the technology was worth made Mehta suspicious that Technicolor's very similar behavior with MNI had also resulted in a huge price disparity. Since this suspicion started the statute of limitations running in June 2012, the exact date thereafter when Metabyte learned the true value of the patents does not matter for purposes of demurrer.

Technicolor relatedly contends Metabyte did not exercise diligence, that is, Metabyte should have discovered Technicolor's wrongdoing earlier. Metabyte alleged specific conduct and statements by Technicolor board members and officers and a Technicolor-employed MNI board member designed to conceal the true value of the patents to minority shareholders of MNI, which included Metabyte and Mehta. These allegations show a fiduciary duty on the part of Technicolor, and when such a duty exists, awareness of facts that would ordinarily call for investigation does not excite suspicion. (See *Bennett v. Hibernia*

22

*Bank* (1956) 47 Cal.2d 540, 560.)  Mehta alleged that he accepted the conduct and statements.

Technicolor also contends Metabyte should be judicially estopped by statements in its federal complaint and Article 145 application.  Judicial estoppel requires that the party to be estopped " 'was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true).' " (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986.)

The district court did not adopt Metabyte's claim that it learned of its injury in 2012.  The court specifically found the pleading too vague and ruled that the RICO cause of action began to accrue in 2009.

Technicolor does not explain how Metabyte was successful in asserting that position in the French proceeding.  The auction was in December 2009; four years from that date would be December 2013.  Metabyte's Article 145 proceeding was filed in April 2013, and so appears to have been timely under French law without regard to delayed discovery.  It appears undisputed that filing the application tolled the statute of limitations in France to some degree.  The allegations of the complaint suggest the Article 145 proceeding was still pending when the French criminal complaint was filed, obviating the need for the French court to consider delayed discovery in connection with that action.[7]  If French law is to the contrary, or if Technicolor has a more cogent argument about statements in the French proceedings, those matters can and should be addressed in further proceedings on remand.

---

[7]    Metabyte has represented that the Article 145 proceeding was still pending at that point and, if necessary, it can and will amend the complaint to so allege.

23

## DISPOSITION

The judgment is reversed.  We affirm the trial court's ruling sustaining the demurrer on the alternate ground that Metabyte failed to adequately plead facts showing that its decision to proceed in France was objectively reasonable and subjectively in good faith.  We grant Metabyte leave to amend and remand for further proceedings.  Respondents to pay costs on appeal.

## CERTIFIED FOR PUBLICATION


STRATTON, P. J.

We concur:


GRIMES, J.



WILEY, J.